Patrick M. Costello, Esq. (Bar No. 117205)
VECTIS LAW GROUP
PMB# 615, 274 Redwood Shores Pkwy
Redwood City, California 94065
Telephone: (408) 291-5211
Facsimile: (650) 320-1687
E-mail: pcostello@vectislawgroup.com

Attorneys for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

In re: ) Case No.: 14-53288-SLJ
)
Sierra-Saratoga Investments, LLC, ) Chapter 11
)
Debtor. ) Date: October 2, 2014
) Time: 10:00 a.m.
) Place: Courtroom 3099, 280 S 1st St., 3rd Fl.
) San Jose, CA 95113
) Judge: Hon. Stephen L. Johnson

## CHAPTER 11 STATUS CONFERENCE STATEMENT

Sierra-Saratoga Investments, LLC, the debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), hereby submits this Chapter 11 status conference statement.

**BACKGROUND AND CAUSES FOR BANKRUPTCY RELIEF**

The Debtor is a Delaware limited liability company, and its managing member is Jeff Wyatt ("Wyatt"), the designated individual responsible person in this case.

The Debtor's principal asset is a deed of trust on certain improved real property located at 19370 Saratoga Los Gatos Road, Saratoga, California (the "Property"), owned by Daniel and Linda Duc ("Duc") securing amounts due under a promissory note in the principal amount of $70,000.00 together with other amounts which may now or hereafter be owed by Duc to the Debtor in connection with real estate services provided in connection with the Property. The Property is further encumbered by a first deed of trust in favor of Bank of America, N.A. ("BofA") securing an

indebtedness of approximately $6.5 million. Duc has been working to subdivide the Property into three parcels with a combined value of $10 million or more. Duc has already entered into contracts to sell one or more of the parcels on approval of the subdivision of the Property. The Debtor expects that such approvals are likely to occur in December 2014.

The Debtor's principal, Wyatt, has been providing real estate services to Duc for more than a year in connection with Duc's efforts to subdivide the Property and is owed substantial amounts in connection therewith. In February 2014, Wyatt became concerned that the status of Duc's loan from BofA posed a risk that Duc might be unable to pay Wyatt from the proceeds of a disposition of the Property: while negotiating with Duc concerning a restructure of its debt, BofA had simultaneously initiated procedures to foreclose on the Property, although BofA repeatedly postponed proceeding forward. Accordingly, Wyatt requested security for amounts owed for his services in connection with the Property. In order to keep the liabilities associated with the Property separate and distinct from liabilities which Duc owed Wyatt in connection with other real estate projects, Wyatt transferred the amounts then due him to the Debtor, and Duc issued a promissory note to memorializing that amount and granted the Debtor a deed of trust on the Property junior to the BofA deed of trust. Duc and BofA continued to negotiate for the restructuring of the BofA secured debt, but in July 2014, BofA indicated that it would proceed forward with a foreclosure sale of the Property. The Debtor believes that there is more than sufficient equity in the Property to satisfy in full the amounts due the Debtor, but foreclosure by BofA would extinguish the Debtor's deed of trust and prospect of recovery. Accordingly, the Debtor sought bankruptcy relief to stay the foreclosure sale and obtain a breathing spell in which another alternative to foreclosure could be formulated.

BofA has filed its proof of claim and the Debtor is advised that BofA has continued the scheduled foreclosure sale to October 22, 2014.

## DEBTOR'S ASSETS AND LIABILITIES

The Debtor functions as a holding company and the note and deed of trust of the Property as its only assets. The Debtor has no other assets other than a small amount of cash funded by Wyatt to meet costs of the Chapter 11 U.S. Trustee fees. However, Wyatt may contribute right to payment of additional amounts due in connection with the Property to the Debtor. As a non-operating holding company, the Debtor has no operating liabilities. The Debtor has scheduled as creditors those entities who have secured claim senior to the Debtor's interest in the Property because these creditors have the ability through exercised of their rights against the Property to extinguish the Debtor's property interest and recovery of its debt: the Debtor has accordingly scheduled them in the same manner as non-recourse debt. The Debtor has no unexpired leases or executory contracts to be assumed, assigned or rejected.

## INITIAL DEBTOR INTERVIEW AND §341 MEETING OF CREDITORS

The Debtor's responsible individual and counsel attended the initial debtor interview with the U.S. Trustee and the §341 meeting of creditors. In addition, the Debtor has responded to various inquiries from the U.S. Trustee and amended its schedules and statement of financial affairs in response to the U.S. Trustee's concerns.

## EMPLOYMENT OF PROFESSIONALS

The Court has entered its order approving the employment of Vectis Law Group ("Vectis") as the Debtoir's general bankruptcy counsel. The U.S. Trustee raised certain questions concerning the funding of bankruptcy counsel's retainer and Vectis has supplemented its disclosures to address those concerns.

While it may be possible that a valuation of the Property and the Debtor's interest therein, may be required in the future, the Debtor has no current plans to hire an appraiser.

## POST-PETITION OPERATIONS AND FINANCING

The Debtor is a holding company with no employees and apart from U.S. Trustee fees,

minimum taxes and professional fees, the Debtor does not foresee any material post-petition accruals or need for post-petition financing.

### CHAPTER 11 PLAN

The Debtor is informed that Duc and BofA are engaged in discussions concerning restructuring of the BofA debt that will result in the cessation of BofA's foreclosure efforts. Success in those restructuring negotiations will achieve the goals of the Chapter 11 process without incurring the expense of the plan process. The Debtor proposes to defer consideration of a plan until the end of November to see if a consensual restructuring of the secured debt can be achieved.

Dated: September 23, 2014          VECTIS LAW GROUP

By: /s/ Patrick Costello
Patrick Costello
Attorneys for Debtor and Debtor-in-Possession